```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DR. ARTHUR FASS,                                               :
                    Plaintiff,                                 :
                                                               :     OPINION AND ORDER
v.                                                             :
                                                               :     24 CV 257 (VB)
NORTHWELL HEALTHCARE SYSTEM,                                   :
                    Defendant.                                 :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Dr. Arthur Fass brings this employment discrimination action against defendant Northwell Health, Inc.[1] ("Northwell"), alleging Northwell discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the New York State Human Rights Law ("NYSHRL").

Now pending is defendant's motion for summary judgment. (Doc. #19).

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The parties have submitted briefs, statements of material fact pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I.     Plaintiff's Employment

Plaintiff, who was 70 years old when he commenced this action, is a trained cardiologist and has practiced medicine in the New York metropolitan area for more than 40 years.

---

[1] In its answer, defendant asserts Northwell Health, Inc., employed plaintiff and that it was improperly sued herein as "Northwell Healthcare System," as reflected in the caption. (Doc. #8 at 1).

1

Beginning in the 1990s, plaintiff worked at North State Cardiology, a medical practice he co-founded alongside two other cardiologists: Dr. Dina Katz and Dr. Franklin Zimmerman. In 2013, Phelps Hospital ("Phelps") acquired North State Cardiology. After Phelps's acquisition of their practice, plaintiff, Dr. Katz, and Dr. Zimmerman accepted individual employment agreements with Phelps. At that time, plaintiff was approximately 60 years old.

Plaintiff's 2013 employment agreement (the "2013 agreement") set forth the terms of his employment with Phelps. As relevant here, the agreement included an initial employment term of five years, which would automatically renew for an additional five years at the conclusion of the term unless either Phelps or plaintiff notified the other of an intent not to renew with at least 180 days' notice. Plaintiff was "pleased" by the offer of a five-year term of employment because "it offer[ed] a degree of security" that Phelps "intend[ed] to keep us for at least a five-year period." (Doc. #22-2 ("P. Dep.") at Tr. 67–68). He found the automatic renewal term "important" because it showed Phelps contemplated continuing his employment past the expiration of the 2013 agreement. (Id. at Tr. 72).

The 2013 agreement also included collective performance objectives for plaintiff, Dr. Katz, and Dr. Zimmerman. For example, the trio were expected to achieve 25,000 Work Relative Value Units ("wRVUs") as a group ever year. wRVUs are a common performance metric linked to billing codes entered by a physician while treating patients. Essentially, the more wRVUs recorded by a physician, the more revenue generated by the medical practice or hospital.

In 2015, Phelps was acquired by Northwell, a nonprofit healthcare provider that manages numerous hospitals in the New York metropolitan area. Plaintiff's employment agreement with Phelps transitioned to Northwell but otherwise continued unchanged until 2017, when plaintiff was appointed Director of Medicine at Phelps. In that position, plaintiff's responsibilities

included administrative work, such as interviewing new physicians and organizing various hospital committees, in addition to his clinical duties.  To recognize that change in responsibilities, the parties added an amendment to plaintiff's employment agreement (the "2017 amendment") that called for him to devote approximately 20% of his working time to the administrative responsibilities assigned to the Director of Medicine.

Plaintiff's appointment as Director of Medicine was in line with his excellent reputation at Phelps.  Dr. Varinder Singh, Chief of Cardiology at Lenox Hill Hospital and Senior Vice President of Cardiology at Northwell, called plaintiff a "legend" and a "very good doctor" who "took a small community hospital and built a nice program, both in medicine and in cardiology."  (Doc. #22-9 at Tr. 17).

In July 2019, the parties entered into another employment agreement (the "2019 agreement").  The 2019 agreement included an employment term of three years.  It also stated plaintiff's employment would "automatically renew . . . for successive terms of one (1) year" unless (i) either Northwell or plaintiff notified the other of an intent not to renew with at least 120 days' notice or (ii) either party terminated the contract early.  (Doc. #22-6 at 1).  Again, plaintiff found the multi-year term of employment "important."  (P. Dep. at Tr. 101).  The 2019 agreement was signed by plaintiff, Dr. Varinder Singh,[2] and Deborah Schiff, the Executive Vice President of Ambulatory Strategy and Business Development at Northwell.  In addition, the 2019 agreement reduced the group wRVU expectation for plaintiff, Dr. Katz, and Dr. Zimmerman to 17,400 hours per year and reduced plaintiff's administrative commitment as Director of Medicine to 10% of his total working time.

---

[2] Because both Dr. Varinder Singh and Dr. Binoy Singh, discussed below, played significant roles in the relevant factual background, the Court will refer to each by his full name to avoid confusion.

The parties made two amendments to the 2019 agreement. In March 2021, they agreed to slightly increase plaintiff's compensation for his Director of Medicine duties. Later that year, they agreed to eliminate the collective wRVU target applicable to plaintiff, Dr. Katz, and Dr. Zimmerman and replace it with an individual target of 5,800 wRVUs per year for plaintiff. Dr. Varinder Singh signed both amendments on behalf of Northwell.

II.     Alleged Discrimination

Shortly after the parties signed the 2019 agreement, doctors and executives at Northwell began discussing potentially hiring another cardiologist at Phelps. On September 3, 2019, Dr. Zimmerman (plaintiff's former partner at North State Cardiology) emailed Taylor Hathaway Rossiter, Vice President for Northwell's Cardiology Service Line, and copied Dr. Varinder Singh, writing that he and Dr. Varinder Singh had "been discussing . . . our desire to recruit a new noninvasive cardiologist for our practice and begin the process of succession planning." (Doc. #22-10 at 2).[3] Dr. Zimmerman explained they "wish[ed] to recruit a new or recently graduated cardiology fellow no later than July of 2020." (Id.).

According to plaintiff, Dr. Zimmerman was "speaking for himself" when discussing succession planning, because plaintiff "was not thinking of retirement at all" in September 2019. (P. Dep. at Tr. 110). Plaintiff agreed that Phelps should hire a new cardiologist in 2019, but only because the practice was "simply too busy"—not because he was contemplating retirement. (Id. at Tr. 112).

Plaintiff did not discuss his potential retirement with colleagues at Northwell or Phelps until the late summer and early fall of 2022. Those conversations began after July 1, 2022, when

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

4

the 2019 agreement automatically renewed and converted to a one-year employment term set to expire on June 20, 2023. Specifically, Northwell executives discussed with plaintiff his "long-term plans" and the prospect of retirement. (P. Dep. at Tr. 115–16). By that time, Dr. Binoy Singh had been appointed Chair of the Cardiology Department at Phelps, and he assumed a central role in negotiating with plaintiff.

A group of administrators at Northwell, including Dr. Varinder Singh, Dr. Binoy Singh, and Ms. Hathaway Rossiter discussed various contract options for plaintiff. On October 7, 2022, Ms. Hathaway Rossiter emailed the group and listed "two proposed options" for plaintiff's next contract offer. (Doc. #22-11 at ECF 5). "Option #1," labeled as a "Career Completion Contract," would give plaintiff a one-year employment term with "no renewals" along with a clinical base salary tied to a part-time work schedule and an expectation of "2,900 annual wRVUs." (Id.). "Option #2," labeled as a "Fulltime Renewal," included a clinical base salary tied to a full-time work schedule and an expectation of "7,785 annual wRVUs." (Id.).

That same day, Dr. Varinder Singh responded to Ms. Hathaway Rossiter, writing that plaintiff must be "presented both options and decide[] which one he prefers," with the "understanding option one is a one year career completion contract." (Id. at ECF 4). Dr. Binoy Singh responded, asking if he could present the two options to plaintiff "early next week." (Id.). Dr. Varinder Singh replied, writing, "Sooner the better[.] We need a decision." (Id.). Dr. Robins Gottlock, the Medical Director of Ambulatory Primary Care and Medical Specialty Services for Northwell, responded he was "OK with whichever [plaintiff] accepts, although I think it's clear to most of us that option 1 seemingly makes most sense." (Id. at ECF 3).

The next week, on October 14, 2022, Dr. Binoy Singh emailed the group to inform them he had spoken with plaintiff on October 12 and "presented the two contract renewal options."

5

(Doc. #22-11 at ECF 3).  According to Dr. Binoy Singh, plaintiff was "leaning toward Option 1 but [was] struggling with the 'no renewal' part of the terms."  (Id.)  Therefore Dr. Binoy Singh "asked that [plaintiff] take a few days to consider the two options as presented" before meeting with Dr. Binoy Singh again to "share [plaintiff's] decision."  (Id.).

Plaintiff indeed had "problems" with the lack of a renewal provision, but he testified in his deposition that Dr. Binoy Singh led him to believe "the situation regarding the renewal would be readdressed during the course of the following year" and "a decision would be made at that time about whether or not" the parties would renew plaintiff's employment agreement.  (P. Dep. at Tr. 202–03).  Plaintiff admits, however, that Dr. Binoy Singh never gave him a verbal assurance his contract would be renewed.

Plaintiff also had concerns about the three-year offer because he felt the 7,785 wRVU target was "impossible" to achieve, as he was "already working in maximum capacity" in addition to performing his administrative and teaching duties.  (P. Dep. at Tr. 194–96).  Therefore, plaintiff felt he "did not have a choice" in deciding between the one-year and three-year options.  (Id. at Tr. 198).

At some point after the initial meeting with Dr. Binoy Singh, plaintiff spoke with Dr. Varinder Singh, who "insist[ed] that [plaintiff] give him an answer" about which option plaintiff would choose.  (P. Dep. at Tr. 193).

On October 20, 2022, Dr. Binoy Singh emailed the group, writing "[Plaintiff] has agreed to accept contract renewal Option #1 (Career Completion)."  (Doc. #22-11 at ECF 2).  He then proposed three next steps for the group to take: "1. Present [plaintiff] with the contract/term sheet for review and signature asap"; "2. Initiate/develop practice transition strategy and implement once contract commences"; and "3. Discuss Dep[artment] Recruitment efforts."  (Id.).  Around

6

that time period, plaintiff and Dr. Binoy Singh discussed plaintiff's eventual retirement from the cardiology practice at Phelps. Simultaneously and continuing into 2023, Northwell attempted to recruit cardiologists to join the practice at Phelps. Dr. Varinder Singh testified this recruitment plan was separate from plaintiff's contract decision, and Northwell did not target any doctors specifically to replace plaintiff.

Plaintiff signed the agreement on December 28, 2022 (the "2022 agreement") and Dr. Varinder Singh and Ms. Schiff signed on behalf of Northwell. At that time, plaintiff was 69 years old. The 2022 agreement included a one-year term of employment and contained no automatic renewal provision. The 2022 agreement does not include the phrase "career completion" or any similar language.

Throughout the first six months or so of 2023, plaintiff and Dr. Binoy Singh spoke several times about plaintiff's wRVU productivity and corresponding compensation.

They first discussed the prospect of plaintiff's continued employment at Northwell in August 2023, when Dr. Binoy Singh met with plaintiff in his office. Plaintiff turned the conversation to his employment and asked "what his employment agreement would look like moving beyond 2023." (Doc. #22-14 at Tr. 44). Dr. Binoy Singh responded that plaintiff's employment agreement ended on December 31, 2023, which left plaintiff "incredulous," "taken aback," and "extremely upset." (P. Dep. at Tr. 228). Plaintiff yelled at Dr. Binoy Singh, "You're not going to fuck me." (Id. at Tr. 229). Dr. Zimmerman appeared at some point during this confrontation and was "also incredulous that [Northwell] planned to terminate [plaintiff] at the end of the contract," asking Dr. Binoy Singh, "You don't really mean to do that, do you?" (Id.). In response to both plaintiff's and Dr. Zimmerman's questions, Dr. Binoy Singh repeated that "the contract was over" as of December 31, 2023. (Id. at Tr. 230–31).

7

In the days following this confrontation, plaintiff complained to Dr. Varinder Singh. Dr. Varinder Singh told plaintiff he was surprised and concerned at Dr. Binoy Singh's treatment of plaintiff, and he gave plaintiff the impression that he (Dr. Varinder Singh) "was not aware of what took place and that he intended to reverse the decision." (P. Dep. at Tr. 231–32). Plaintiff did not ask Dr. Varinder Singh why Northwell had decided not to continue his employment past December 31, 2023.

Also in August 2023, plaintiff spoke with Ms. Hathaway Rossiter on the phone and asked her if Northwell was not going to renew his contract because he was 70 years old, or whether Ms. Hathaway Rossiter knew plaintiff had been ill during the past year. In notes she took at the end of her conversation with plaintiff, Ms. Hathaway Rossiter wrote that plaintiff felt Northwell was discriminating against him on the basis of his age. Ms. Hathaway Rossiter also asked plaintiff to consider if he would be interested in retiring but continuing to teach medical residents in a "voluntary capacity." (Doc. #22-4 at Tr. 55).

On September 14, 2023, Dr. Binoy and Ms. Hathaway Rossiter met with plaintiff to continue the discussion begun in August. At that meeting, plaintiff "[r]epeatedly" asked them why Northwell did not intend to renew his employment. (P. Dep. at Tr. 235). In response, Dr. Binoy Singh "reinforced" to plaintiff that the 2022 employment agreement ended on December 31, 2023. (Doc. #22-14 at Tr. 51). To plaintiff, this was a "complete[]" reversal of the conversation he had with Dr. Varinder Singh following the August 2023 confrontation with Dr. Binoy Singh. According to plaintiff, this was a "terrible blow" because, based on his conversation with Dr. Varinder Singh, he had been "very confident that I would have a very good outcome" with Dr. Binoy Singh and Ms. Hathaway Rossiter. (P. Dep. at Tr. 236–38). In Ms. Hathaway Rossiter's words, both plaintiff and Dr. Binoy Singh "got agitated again" and the

8

September 14 meeting "didn't really accomplish much." (Doc. #22-4 at Tr. 58). Also during that meeting, Dr. Binoy Singh and Ms. Hathaway Rossiter asked plaintiff to write a letter informing his patients that he was retiring and suggesting his patients transfer to other Northwell cardiologists, but plaintiff refused, saying, "I'm not retiring. That's your decision, not mine." (P. Dep. at Tr. 251–52).

Despite plaintiff's stated desire to continue his employment past the expiration of the 2022 agreement, Dr. Varinder Singh decided not to extend plaintiff's employment for two reasons. First, he felt plaintiff had "made his choice" to accept the one-year contract offer in 2022 and Dr. Varinder Singh wanted to "hold[] him to his decision." (Doc. #22-9 at Tr. 46, 49). Second, Dr. Varinder Singh intended to develop the Northwell cardiology department according to "a vision of a program" that revolved around recruiting cardiologists with specific specialties. (Id. at Tr. 49–50). "If [plaintiff] had agreed to the three-year" contract offer, "he would have been part of [Northwell's] vision," but because plaintiff chose the one-year offer, Dr. Varinder Singh "took [plaintiff] out of that vision." (Id. at Tr. 50).

In November 2023, Northwell sent letters to plaintiff's patients, informing them plaintiff would be "end[ing] his storied tenure" with Northwell on December 31, 2023, and suggesting that his patients choose a new cardiologist from a list of four Northwell clinicians. (Doc. #22-17). All of the suggested clinicians were hired by Northwell before plaintiff stated his desire to continue his employment; in fact, one was Dr. Katz—plaintiff's former partner at North State Cardiology, who was in her late fifties or early sixties in November 2023. Northwell currently employs cardiologists who are the same age as plaintiff, if not older.

A month later, in December 2023, Northwell offered to extend plaintiff's role as Director of Medicine on an interim basis until it hired a replacement for an expanded administrative role.

9

Plaintiff rejected that offer and his employment at Northwell correspondingly ended on December 31, 2023.

## DISCUSSION

I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

10

judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Analysis

Defendant argues plaintiff (i) fails, as a matter of law, to establish a prima facie case of age discrimination under the ADEA or the NYSHRL, and (ii) cannot establish that defendant's non-discriminatory reasons for not renewing the 2022 agreement were pretextual.

The Court disagrees.

   A.     Legal Standard

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection extends to employees who are at least forty years old. Id. § 631(a).

The NYSHRL similarly provides that an employer may not "refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" because of, among other characteristics, an individual's age. N.Y. Exec. Law. § 296(1)(a).

"Age discrimination claims under the ADEA and NYSHRL are evaluated under the McDonnell Douglas burden-shifting framework." Rinaldi v. Mills, 2022 WL 17480081, at *1 (2d Cir. Dec. 7, 2022) (summary order); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, a plaintiff must establish a prima facie case of age discrimination by demonstrating: "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that

11

such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010).  "This burden is not a heavy one."  Id.

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  See United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011).  If the employer meets this burden, the burden shifts back to the plaintiff to show a reasonable jury could find, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  Gorzynski v. JetBlue Airways Corp., 596 F.3d at 106.

"The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's only consideration, but rather that the adverse employment action would not have occurred without it." Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) (emphasis in original).  "In this respect it is important to consider whether the explanations that [the employer] gave for [the plaintiff's] firing were pretextual." Gorzynski v. JetBlue Airways Corp., 596 F.3d at 107.

B.  Application

1.  Prima Facie Case

Plaintiff has put forth a prima facie claim of age discrimination. Defendant concedes plaintiff is protected under the ADEA and was qualified for his position, but they contest the next two steps of the prima facie test.  The Court is not persuaded.

First, defendant contends its decision not to renew the 2022 agreement does not constitute an adverse employment action, but its position flies in the face of binding case law.  In Leibowitz v. Cornell Univ., 584 F.3d 487, 500 (2d Cir. 2009), superseded by statute on other grounds, the

Second Circuit held "where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action for purposes of . . . the ADEA." Defendant attempts to distinguish Leibowitz on its facts, arguing plaintiff had no reasonable expectation of renewal because the 2022 agreement was time limited. In doing so, defendant points to non-binding district court cases that have examined whether plaintiffs had a reasonable expectation of renewal. See Dorman v. Webster Cent. Sch. Distr., 576 F. Supp. 2d 426, 429 (W.D.N.Y. 2008); Richards v. New York City Health & Hosps. Corp., 2023 WL 7611560, at *8 (E.D.N.Y. Nov. 14, 2023).

Even accepting arguendo that Leibowitz's holding contains an implied requirement that a plaintiff reasonably expect renewal (and the Court is skeptical), such a requirement is met here—especially given the de minimis burden on plaintiff at the prima facie stage. Wellington v. Spencer-Edwards, 2019 WL 2764078, at *3 (S.D.N.Y. July 1, 2019). Plaintiff had signed a series of contracts with defendant and, although the 2022 agreement did not contain a renewal agreement, drawing all permissible inferences in plaintiff's favor, Dr. Binoy Singh led plaintiff to believe the parties would discuss the possibility of renewal at some point in 2023. That is sufficient to give plaintiff a reasonable expectation the 2022 agreement would be renewed. Non-renewal of the 2022 agreement was an adverse employment action.

Second, defendant argues plaintiff has not adduced evidence warranting an inference of discrimination. As discussed in greater detail below, plaintiff's case is strong enough to create an issue of triable fact as to pretext. Therefore, he can raise an inference of discrimination because "a plaintiff who can prevail at the third stage of the McDonnell Douglas process has necessarily demonstrated circumstances giving rise to an inference of discrimination." Verne v. New York City Dep't of Educ., 697 F. Supp. 3d 30, 46 (S.D.N.Y. 2023).

13

Accordingly, plaintiff has met his burden to put forth a prima facie case of age discrimination.

### 2. Non-Discriminatory Reason

Plaintiff does not dispute that defendant has provided a non-discriminatory reason for not renewing the 2022 agreement. In justifying its decision, defendant relies on the time-limited structure of the agreement and the desire to follow a programmatic vision for the cardiology department. Those reasons are non-discriminatory and sufficient to satisfy the second McDonnell Douglas step.

### 3. Pretext

Plaintiff has created a triable issue of fact as to whether his age was a but-for cause of defendant's refusal to renew the 2022 agreement.

Viewed in the light most favorable to the plaintiff, the evidence shows the following sequence of events. At some point in 2022, prior to offering plaintiff an employment agreement, Northwell executives discussed with plaintiff his "long-term plans" and potential retirement. (P. Dep. at Tr. 118). Then, in October 2022, Northwell executives discussed via email the two contract offers they intended to give plaintiff: the one-year offer they internally labeled the "Career Completion Contract" and the three-year offer with a higher wRVU target. (Doc. #22-11 at ECF 5). One Northwell executive commented he would accept whatever choice plaintiff made, but "it's clear to most of us that option 1 seemingly makes most sense." (Id. at ECF 3).

Dr. Binoy Singh presented both options to plaintiff, who had "problems" with the lack of a renewal provision in the first option, but was assuaged after being led to believe by Dr. Binoy Singh that the parties would discuss the potential for renewal at a later date. (P. Dep. at 202–03). Plaintiff also felt he was presented with a false choice, because the wRVU target in the three-year

option was prohibitively high and "impossible" to achieve.  (Id. at Tr. 194–96).  While plaintiff was considering his choices, he spoke to Dr. Varinder Singh, who "insist[ed] that [plaintiff] give him an answer."  (P. Dep. at Tr. 193).  When plaintiff chose the one-year term, the Northwell executives responded by making internal plans to "[i]nitiate/develop practice transition strategy" and to discuss recruiting other cardiologists.  (Doc. #22-11 at ECF 2).  The 2022 agreement did not include the phrase "career completion" or anything similar.

Then, when plaintiff asked Dr. Binoy Singh in August 2023 about renewal options, Dr. Binoy Singh refused to discuss the possibility and insisted that plaintiff's employment would end at the conclusion of the 2022 agreement.  After learning of plaintiff's desire to continue his employment, Dr. Varinder Singh refused to consider extending plaintiff's contract and Ms. Hathaway Rossiter asked plaintiff if he would consider retiring but teaching medical residents as a volunteer.  Finally, Ms. Hathaway Rossiter and Dr. Binoy Singh attempted to convince plaintiff to inform his patients of his pending retirement, even though he refused to retire.

Viewing the record in the light most favorable to plaintiff, a reasonable jury could conclude defendant (i) decided it wanted plaintiff to retire, (ii) maneuvered him into choosing the one-year option by including a prohibitively large wRVU target in the three-year offer and leading plaintiff to believe they would discuss renewal of the one-year contract at a later date, and then (iii) refused to continue his employment even when he wanted to do so.  If a reasonable jury were to decide on that interpretation of the facts here, they would find plaintiff had proven by a preponderance of the evidence that age was the but-for cause of defendant's decision not to renew the 2022 agreement.  Gorzynski v. JetBlue Airways Corp., 596 F.3d at 106.

Defendant maintains "there is no evidence" other than plaintiff's age that could show age discrimination, but that is belied by the record.  In fact, much of the relevant evidence revolves

around plaintiff's age. The defendant asked plaintiff about his retirement, presented him with a contract option it understood to signal the end of his career, and then asked him to send a retirement notice to his patients even when he wanted to continue his employment. This is all directly tied to his age. Even if the defendant also considered its programmatic vision for Northwell's cardiology department when refusing to renew the 2022 agreement, that does not preclude a finding of age discrimination. The but-for requirement does not demand that "age was the employer's <u>only</u> consideration, but rather that the adverse employment action <u>would not have occurred without it</u>." <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d at 168 (emphasis in original). A reasonable jury could conclude defendant would not have offered the 2022 agreement—and then refused to renew it against plaintiff's wishes—if plaintiff were younger. Therefore, defendant cannot obtain summary judgment by relying on cases in which plaintiffs adduced no evidence of discrimination beyond their own subjective belief. <u>See</u> <u>Wong v. Blind Brook-Rye Union Free Sch. Dist.</u>, 2022 WL 17586324, at *21 (S.D.N.Y. Dec. 12, 2022); <u>Assue v. UPS, Inc.</u>, 2018 WL 3849843, at *20 (S.D.N.Y. Aug. 13, 2018).

Defendant's strongest argument is its emphasis on the same actor presumption—the inference that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 560 (2d Cir. 1997). Here, Dr. Varinder Singh signed the 2022 agreement on behalf of Northwell and then refused to extend that agreement despite plaintiff's request to do so. The same actor presumption thus cuts against plaintiff's claim and would likely be a compelling argument for defendant at trial. But it does not warrant summary judgment. The inference is "permissive, not mandatory," and courts decline to apply it when the evidence could nevertheless support an inference of

16

discrimination.  Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 274 n.21 (E.D.N.Y. 2013) (collecting cases).  That is especially true when a reasonable jury could conclude the hirer supported the defendant for the position but had plausible, discriminatory reasons for taking the adverse employment action.  See id.  Viewing the evidence as a whole, a reasonable jury could conclude Dr. Varinder Singh was comfortable hiring plaintiff for a one-year contract but, in light of his advancing age, pushed plaintiff toward retirement against his wishes.

Defendant also maintains its consistent justifications for refusing to renew the 2022 agreement weigh in favor of granting summary judgment, but it overstates the significance of this evidence.  Yes, defendant has not offered "shifting justifications" for the non-renewal, meaning plaintiff cannot claim an inference of discrimination that could be drawn from inconsistent reasons.  Cf. Lott v. Coreone Tech., 2016 WL 462486, at *13 (S.D.N.Y. Feb. 2, 2016).  But the absence of such an inference does not negate the other indicia of discrimination, like defendant's repeated references to plaintiff's age and the late stage of his career.

To be sure, many of the typical indicia of pretext are not present in this case.  For instance, plaintiff does not identify any discriminatory remarks about his age made by Northwell executives.  See Hanley v. New York City Health and Hosps. Corp., 722 F. Supp. 3d 112, 124 (E.D.N.Y. 2024).  Nor does he put forth evidence of being replaced by a younger physician.  See Vaigasi v. Solow Mgmt Corp., 2017 WL 945932, at *5–6 (S.D.N.Y. Feb. 16, 2017).  In fact, it is undisputed that Northwell employs cardiologists who are around plaintiff's age or older.  At bottom, plaintiff's claim for age discrimination depends on:  (i) his professed understanding from Dr. Binoy Singh that the parties would discuss potentially renewing the 2022 agreement at some point in 2023, (ii) his conclusion that he had no real choice when deciding between the one-year and three-year offers because the wRVU target in the three-year option was unacceptably high,

and (iii) the evidence showing defendant viewed plaintiff as approaching the end of his career. Even when viewing that evidence as a whole, plaintiff's case stands on thin ice.

Ultimately, however, when deciding a motion for summary judgment, the Court must engage in "issue identification, not issue resolution." Repp v. Webber, 132 F.3d 882, 890 (2d Cir. 1997). Indeed, the Court cannot substitute its own judgment for that of a factfinder, especially when it comes to credibility determinations. Here, the factfinder must evaluate the credibility of plaintiff and Dr. Binoy Singh and determine whose description of their October 2022 discussions deserves more weight. Even if the Court finds plaintiff's case to be weak, a reasonable jury could conclude defendant discriminated against him on the basis of his age. No more is required to survive summary judgment.

## CONCLUSION

The motion is DENIED.

The Court will conduct a case management conference on <u>September 25, 2025, at 2:30 p.m.</u>, to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, counsel are directed to discuss settlement in good faith prior to that date.

The Clerk is instructed to terminate the motion (Doc. #19).

Dated: July 24, 2025
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge